# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL CRAIG KIMBALL, | : | Civil No. 3:18-cv-1411 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| JOHN E. WETZEL, *et al.*, | : | |
| Defendants | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Plaintiff Daniel Craig Kimball ("Kimball"), a state inmate incarcerated at the State Correctional Institution at Mahanoy ("SCI-Mahanoy"), Frackville, Pennsylvania, commenced this civil rights action pursuant to 42 U.S.C. § 1983 on July 16, 2018, alleging that Defendants' failure to provide him with certain Hepatitis C treatment violates his Eighth Amendment right to adequate medical care. (Doc. 1). The complaint was accompanied by a motion (Doc. 2) for a preliminary injunction.

In response to the complaint, the Pennsylvania Department of Corrections Defendants, John E. Wetzel ("Wetzel"), Joseph J. Silva ("Silva"), Paul A. Noel ("Noel") Brenda Houser ("Houser"), and John Steinhart ("Steinhart") (collectively referred to as "DOC Defendants") filed a motion (Doc. 23) to dismiss and briefs (Docs. 21, 36) in opposition to the motion for a preliminary injunction. Defendants Correct Care Solutions and Jay Cowan (Cowan) filed a motion (Doc. 34) to dismiss or, in the alternative, motion

for summary judgment, and a brief (Doc. 37) in opposition to the motion for a preliminary injunction.

On November 1, 2018, the Court ordered Kimball to file a brief in opposition to the DOC Defendants' motion and informed him that his failure to do so would result in the motion being deemed unopposed. (Doc. 31). Kimball failed to file an opposition brief. Kimball has failed to oppose the motion filed on behalf of Correct Care Solutions and Jay Cowan. Consequently, the motions will be deemed unopposed and granted. With regard to the motion for a preliminary injunction, Defendants represent in their supplemental briefs (Docs. 36, 37) that the motion has been rendered moot because Kimball has received the sought-after Hepatitis C treatment. For the reasons that follow, the motions to dismiss will be deemed unopposed and granted; the motion for a preliminary injunction will be denied as moot.

**I.     Kimball's Complaint**

Kimball, an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), currently housed at SCI-Mahanoy, alleges that he suffers from chronic Hepatitis C, fatigue, aching joints and mental confusion, *inter alia*. (Doc. 1, ¶ 4). He alleges that he has requested, but been denied "for non-medical" reasons, anti-viral medications that would cure his liver disease, despite the known benefits of early treatment recommended by the American Association for the Study of Liver Disease ("AASLD") and the Center for Disease Control ("CDC") guidelines. (Id. at 4, 17, 18).

Defendant Noel is the Chief of Clinical Services and serves with Defendant Cowan on the Hepatitis C Treatment Committee, which is responsible for implementing the DOC's Hepatitis C protocol and makes decisions concerning inmate treatment. (Id. at 5). Kimball alleges that, under the guidance of Defendant Noel, Defendant Wetzel "authorized," and the DOC adopted, a medical protocol "concerning who would be treated and not treated with [H]epatitis C anti-viral drugs," and that "[t]he protocol delegates determinations as to who will be treated by the Hepatitis C Committee." (Id. at 24, 32). He alleges that "[u]nder policy, only prisoners with decompensated cirrhosis with esophageal varices are authorized to receive the anti-viral drugs." (Id. at 26).

Kimball takes issue with the policy alleging that "long before the disease has progressed to that stage, individuals suffering from it have suffered irreversable [sic] damage to their liver, decreased liver function, and are at a significantly higer [sic] risk of developing liver cancer. Many also suffer severe extra hepatic manifestations of the disease that adversely affect quality of life." (Id. at 28). He alleges that despite suffering from "fatigue, joint pains, mental confusion, etc.," he has been denied "[H]epatitis C treatment with a cure." (Id. at 31).

He avers that Defendants Noel, Silva, and Cowan are the principle decision-makers "as to who will or will not receive treatment for their Hep-C," and that Noel and Cowan implemented the treatment "even though they knew that denying treatment to prisoners who did not fall under the protocol had no medical justification." (Id. at 33, 34). "Defendants Noel, Cowan, Houser, Wetzel, Steinhart, DOC, adopted and

implemented this protocol knowing that the standard of care in the community as articulated by the AASLD and CDC is to treat all who have chronic Hepatitis C." (Id. at 35).

He alleges that although the policy has been revised as a result of a decision by the Honorable Robert D. Mariani issued in January 2017, in the case of "Abu Jamal v. Wetzel, 2017 WL 34700 (M.D.Pa. 2017)," the revised protocol "remains in effect and is administered and enforced" by Defendants Noel, Wetzel, Cowan, Houser, and Steinhart. (Id. at 39, 40).

He argues that Defendants violated his Eighth Amendment right to adequate medical treatment in failing to adopt, maintain, or follow policies or practices with regard to providing medical treatment to DOC prisoners, "systematically, regularly and continuously delaying him proper treatment, failing to provide follow-up medical care," and failing to "give significance to the findings and/or diagnoses involved in Plaintiff's care and treatment." (Id. at 42).

He seeks injunctive relief, and compensatory and punitive damages. (Id. at p. 13).

## II. Motion for Preliminary Injunction

In his motion for injunctive relief, Kimball seeks a Court Order directing Defendants to provide him with antiviral medications to treat his Hepatitis C. (Doc. 3, pp. 1, 2). According to Defendants' supplemental briefs (Doc. 36, 37) in opposition to the motion, Kimball was approved for administration of Hepatitis C with direct acting antiviral drugs. He commenced treatment on January 21, 2019. Because Kimball has

receiving the requested relief, his motion is rendered moot. See Khodara Envtl., Inc. ex rel. Eagle Envtl., L.P. v. Beckman, 237 F.3d 186, 192-93 (3d Cir. 2001) ("Article III of the Constitution grants the federal courts the power to adjudicate only actual, ongoing cases or controversies."); Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996) ("If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the merit of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot."). The motion will be denied.

**III. Rule 12(b)(6) Motions**

    A.    Standards of Review

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. Innis v. Wilson, 334 F. App'x 454, 456 (3d Cir. 2009) (citing Phillips v. Cnty of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008)). A district court ruling on a motion to dismiss may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

> Under the pleading regime established by [Bell Atl. Corp. v.] Twombly, 550 U.S. 544 (2007) and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675, 129 S.Ct. 1937. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679, 129 S.Ct. 1937. See also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679, 129 S.Ct. 1937.

Connelly v. Lane Const. Corp., 809 F.3d 780, 787–88 (3d Cir. 2016) (internal citations, quotations and footnote omitted). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). At the second step, the Court identities those allegations that, being merely conclusory, are not entitled to the presumption of truth. Twombly and Iqbal distinguish between legal conclusions, which are discounted in the analysis, and allegations of historical fact, which are assumed to be true even if "unrealistic or nonsensical," "chimerical," or "extravagantly fanciful." Iqbal, 556 U.S. at 681. Deciding

whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

B. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Thus, § 1983 limits liability to persons who violate constitutional rights.

For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an

excessive risk to inmate health or safety." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Deliberate indifference has been found where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." Rouse, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)). "Allegations of medical malpractice are not sufficient to establish a Constitutional violation," nor is "[m]ere disagreement as to the proper medical treatment." Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004). A "failure to provide adequate care ... [that] was deliberate, and motivated by non-medical factors" is actionable under the Eighth Amendment, but "inadequate care [that] was a result of an error in medical judgment" is not. Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993); Estelle v. Gamble, 429 U.S. 97, 105–06 (1976).

    1.    DOC Defendants

Kimball seeks to impose liability on the DOC Defendants in their official capacity. Official-capacity suits generally represent an action against an entity of which the government official is an agent. Gregory v. Chehi, 843 F.2d 111, 120

(3d Cir. 1988); see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978). When suits are brought against state officials in their official capacities, those lawsuits are treated as suits against the state. Hafer v. Melo, 502 U.S. 21, 25 (1991). However, the doctrine of sovereign immunity, established by the Eleventh Amendment, protects states, such as the Commonwealth of Pennsylvania, from suits by citizens. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100–01, 117 (1984); Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996); Lavia v. Pennsylvania, 224 F.3d 190, 195–96 (3d Cir. 2000). That immunity runs to state officials if they are sued in their official capacity and the state is the real party upon which liability is to be imposed. Scheuer v. Rhodes, 416 U.S. 232, 237–38 (1974). Consequently, any and all claims seeking money damages against Defendants in their official capacity are barred by sovereign immunity. See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 (3d Cir. 2010).

In turning to the merits of Kimball's claims lodged against Defendants in their personal capacities, to the extent that he seeks to impose liability on any of the named Defendants based upon their responses to his grievances and requests to staff members, such claims lack merit. It has long been recognized that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond, to a prisoner's complaint or grievance, is insufficient to establish personal involvement in the underlying unconstitutional conduct. Rode v. Dellarciprete, 845 F.2d

9

1195, 1207-1208 (3d Cir. 1998) (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right"); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that allegations that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct).

Further, Third Circuit precedent makes clear that "a non-medical prison official" cannot "be charge[d] with the Eighth Amendment scienter requirement of deliberate indifference" when the "prisoner is under the care of medical experts" and the official does not have "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." Spruill, 372 F.3d at 236; see also Durmer, 991 F.2d at 69 (holding that non-physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor"). Kimball's allegations, coupled with his inmate requests and grievances and various responses from prison administration, which are attached to the complaint, demonstrate that he was under the care of medical experts and received continuous monitoring and treatment in the Hepatitis C chronic care clinic. (Doc. 1, pp. 33-36, 38, 40, 46, 48, 77).

Lastly, review of the allegations set forth in the complaint and the inmate requests and grievances, and the responses thereto, demonstrates that Kimball had access to, and benefited from, regular and consistent treatment in the Hepatitis C chronic care treatment, and that he wholly disagreed with that treatment. The "mere disagreement as to the proper medical treatment" does not support a claim of violation of the Eighth Amendment. Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); see also Brown v. DeParlos, 492 F. App'x 211, 216 (3d Cir. 2012). While Kimball may disagree, the administration of the treatment plan described and the monitoring by the Hepatis C chronic care clinic, do not demonstrate deliberate indifference or unnecessary and wanton infliction of pain and do not amount to a constitutional violation. Importantly, deference must be given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

Based on the foregoing, the complaint against the DOC Defendants will be dismissed.

      2.      Defendants Correct Care Solutions and Cowan

Defendants seek dismissal of the claim against them based on Kimball's failure properly exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1996 (the "PLRA"). Specifically, they argue that he failed to identify either Defendant as being involved in the denial of Hepatitis C treatment.

The PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." Ross v. Blake, —U.S. —; 136 S. Ct. 1850, 1856 (2016); see Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."). The text "suggests no limits on an inmate's obligation to exhaust– irrespective of 'special circumstances.'" Id. "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. See Miller v. French, 530 U.S. 327, 337, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")." Id. at 1856-57.

Further, the PLRA mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court, which demands compliance with an agency's deadlines and other procedural rules. Woodford v. Ngo, 548 U.S. 81, 92 (2006); Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004) (concluding that the PLRA includes a procedural default component); Rivera v. Pa. Dep't of Corr., 388 F.App'x 107, 108 (3d Cir. 2010) (stating "[a]n inmate must exhaust his administrative remedies prior to filing a

civil action in federal court."). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. See Spruill, 372 F.3d 218. "As for the failure to [ ] identify [the] named defendants on the grievance form, ... to the extent the identity of a defendant was 'a fact relevant to the claim,' Pennsylvania's prison grievance policy mandated that the identification be included in the inmate's statement of facts on the grievance form. And, ... in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA." Williams v. Pennsylvania Dep't of Corr., 146 F. App'x 554, 557 (3d Cir. 2005) (citing Spruill, 372 F.3d at 234).

Finally, whether an inmate has properly exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. See Small v. Camden County, 728 F.3d. 265, 268 (3d Cir. 2013); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010).[1]

Defendants Correct Care Solutions and Cowan seek dismissal of the complaint based on Kimball's failure to identity them, at any point throughout the grievance process, as being directly involved in the events of which he complains. Kimball does

---

[1] Although Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018), instructs the Court to place the parties on notice that it would consider exhaustion in its role as fact finder and afford the parties the opportunity to be heard under Small v. Camden Cnty, 728 F.3d. 265, 268 (3d Cir. 2013), because Kimball has failed to oppose the DOC Defendants' motion despite being ordered to do so, failed to oppose Correct Care Solutions and Cowan's motion, and has failed to communicate with the Court in any manner since October 1, 2018, the Court determined that the issuance of such notice would be futile.

not dispute this. Although he presented and pursued the grievance concerning his Hepatitis C treatment to final review, he failed to identify Correct Care Solutions and Cowan as being directly involved. (Doc. 1, pp. 40-65, 71,72; Doc. 35-1, pp. 1-12). As noted *supra,* the standard used in determining whether a prisoner has exhausted the administrative process is whether he properly exhausted by complying with applicable grievance procedures and rules. The relevant DOC policy and pertinent language states that "[t]he inmate shall identify individuals directly involved in the event(s)." (DC-ADM 804, § 1(A)(11)(b)). A similar provision in an earlier version of DC-ADM 804, required an inmate to name the individuals in the grievance against whom the inmate eventually brings suit. Spruill, 372 F.3d at 234. The version in effect at the relevant time is even more cogent as it now contains the mandatory language, "shall identify." (DC-ADM 804, § 1(A)(11)(b)). The Spruill Court explained that the purpose of the regulation is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing. Spruill, 372 F.3d at 234. "[I]t is clear, regardless of the purpose of the requirement, that Spruill requires the prisoner-grievant-plaintiff to name in the grievance those he eventually sues, upon pain of procedural default." Hemingway v. Ellers, 2008 WL 3540526, at *11 (M.D. Pa. 2008) (citing Williams, 146 F.App'x. at 557; see also, Singleton v. Beadle, No. 3:17-CV-220, 2018 WL 1129300, at *3 (M.D. Pa. Feb. 26, 2018); McNesby v. Heenan, No. 3:CV-16-0602, 2017 WL 4418421, at *4 (M.D. Pa. Oct. 5, 2017).

Moreover, under Spruill, it is the plaintiff's burden to explain why he did not name a defendant in the grievance. See Spruill, 372 F.3d at 234 (noting that "Spruill did not

[name Brown in his grievance], and has offered no explanation for his failure to do so"). Kimball offers no explanation for his failure to name these Defendants in his grievance. Consequently, the complaint against them will be dismissed for failure to exhaust administrative remedies.

C. Leave to Amend

"The obligation to liberally construe a *pro se* litigant's pleadings is well-established." Haines v. Kerner, 404 U.S. 519, 520-21 (1972); see also Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 339 (3d Cir. 2011) (citing Estelle, 429 U.S. at106). "[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile*.*" Fletcher–Harlee Corp. v. Pote Concrete Contractors., Inc., 482 F.3d 247, 251 (3d Cir. 2007); see also Foman v. Davis, 371 U.S. 178, 182 (1962). Amendment is futile "if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 292 (3d Cir.1988); *see also* Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (stating that "[i]n assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6).").

Affording Kimball the opportunity to amend would be futile given his failure to oppose Defendants' motions and his failure to communicate with the Court in any manner for the last five months.

## IV. Conclusion

Based on the foregoing, The motion (Doc. 2) for a preliminary injunction will be denied as moot and Defendants' motions (Docs. 23, 34) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) will be deemed unopposed and granted.

An appropriate Order will enter.

**BY THE COURT:**

**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

Dated: March 18, 2019